# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHRISTIAN H. WITT**, | Case No. 3:13-CV-01550-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**,<br>Acting Commissioner of Social Security | |
| Defendant. | |

George J. Wall, 1336 E. Burnside Street, Suite 130, Portland, OR 97214. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Catherine Escobar, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Christian Harlan Witt ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the

following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this opinion.

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. The Application

Plaintiff, Christian Harlan Witt, was born in Minneapolis, Minnesota on April 26, 1957. AR 25, 530. On May 7, 2010, Plaintiff protectively filed an application for SSI benefits, alleging disability beginning June 2, 1999. AR 158. He later amended the alleged onset date to March 28, 2008. AR 18. Plaintiff was 53 years old on the date his application was filed, and he is currently 57 years old.

Plaintiff has three daughters and nine grandchildren who live in Alaska. AR 531. He has spent at least ten years of his life in prison, for crimes ranging from driving under the influence to assault. AR 44, 52, 257. Plaintiff also has a history of homelessness, and on June 8, 2010, he reported that he was living in blackberry bushes near the Portland, Oregon airport. Plaintiff later moved into low-income housing in downtown Portland. AR 500. Plaintiff has worked as a telephone solicitor and "rigger worker," which are semi-skilled jobs. AR 25.

Plaintiff's claim for SSI benefits was denied initially on September 1, 2010, and upon reconsideration on October 12, 2012. AR 18. Plaintiff filed a written request for hearing and on February 22, 2012, a hearing was held before an Administrative Law Judge ("ALJ"). AR 31. After the hearing, Plaintiff's attorney sought to amend Plaintiff's onset date to March 28, 2008. AR 157. Plaintiff's attorney also sought to reopen a prior application filed December 7, 2009, which had been denied on March 25, 2010. *Id.* On April 17, 2012, the ALJ issued a decision finding Plaintiff had not been disabled within the meaning of the Social Security Act since March 28, 2008, the amended alleged onset date. AR 18. The ALJ did not expressly reopen Plaintiff's prior application. By considering on the merits issues of the claimant's disability during the already adjudicated period, however, the ALJ *de facto* reopened Plaintiff's previous application. *Lester v. Chater*, 81 F .3d 821, 827 n. 3 (9th Cir. 1995). Plaintiff appealed the ALJ's

decision to the Appeals Council, which denied Plaintiff's request for review on July 2, 2013.

AR 1. Plaintiff now seeks judicial review of the ALJ's decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R.
   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
   significant mental or physical duties done or intended to be done for pay
   or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
   such work, she is not disabled within the meaning of the Act. 20 C.F.R.
   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
   substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's
   regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
   impairment or combination of impairments is "severe" if it significantly
   limits the claimant's physical or mental ability to do basic work activities.
   20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
   this impairment must have lasted or be expected to last for a continuous
   period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
   claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
   §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
   impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the
   impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At the first step in the sequential process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 28, 2008, the alleged onset date. AR 20. At step two, the ALJ determined Plaintiff has the following severe impairments: (1) bipolar affective disorder; (2) a personality disorder; and (3) alcoholism and drug abuse. *Id.* The ALJ noted that there are references to posttraumatic stress disorder and hepatitis C in the record, but determined that those are not severe impairments for Plaintiff. *Id.* At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Next, the ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can perform simple, routine repetitive tasks, and he does best in an environment not requiring close coordination with others. AR 21. In determining Plaintiff's RFC, the ALJ considered Plaintiff's testimony regarding his symptoms, opinion evidence, and the medical record as a whole. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 22. The ALJ also found, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not fully credible. *Id.*

At step four, the ALJ determined that Plaintiff's RFC rendered him unable to perform any past relevant work. AR 24. At step five, based on the testimony of a vocational expert ("VE"), and considering Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that Plaintiff would be able to perform the requirements of unskilled occupations such as an industrial cleaner, hand packer, and groundskeeper. AR 25. These occupations exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the opinion of examining psychologist Dr. Karla Rae Causeya; and (2) improperly rejecting the opinions of Plaintiff's two treating mental health practitioners. In disputing the ALJ's decision to reject the opinion of Dr. Causeya, Plaintiff contends that the ALJ erred in finding that Plaintiff is not fully credible. Thus, the Court first reviews the ALJ's findings regarding Plaintiff's credibility.

### A.  Plaintiff's Credibility

The ALJ gave little weight both to Dr. Causeya's conclusions and to the opinions of Plaintiff's two treating mental health practitioners. AR 23-24. The ALJ gave these opinions little weight in part because she found their conclusions regarding Plaintiff's functional abilities were based on Plaintiff's self-reported symptoms, which the ALJ found not fully credible. AR 22-24. Plaintiff argues that his reports are reliable, and therefore the ALJ erred in discounting the treatment providers' conclusions. The Court finds that the ALJ's conclusions regarding Plaintiff's credibility are supported by substantial evidence in the record.

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted). When doing so, the claimant "need not show

that her [or his] impairment could reasonably be expected to cause the severity of the symptom she [or he] has alleged; she [or he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her [or his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

In weighing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid, [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. For instance, the ALJ may consider inconsistencies either within the claimant's

testimony or between the testimony and the claimant's conduct. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. AR 22-23. The ALJ made this finding in part because Plaintiff's medical treatment had been conservative and sporadic. AR 22. Despite improvement when Plaintiff was on medication, the ALJ found Plaintiff had not always complied with medical treatment. *Id.* Lack of treatment can be a valid reason to discredit a claimant's testimony regarding pain and other symptoms. *Burch*, 400 F.3d at 681 ("ALJ is permitted to consider lack of treatment in his credibility determination."); *see also Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) (upholding adverse credibility finding where claimant failed to report symptoms).

Plaintiff argues that his statements regarding his limitations while medicated are credible because he takes his medications most of the time. In addition, when he has run out of medication it has been very unpleasant for him. Because Plaintiff is chronically homeless and forgetful, he argues that his lapses in medication compliance do not amount to a failure to seek treatment and should not weigh against his credibility. According to Plaintiff, the fact that he gets as much treatment as he does is a testament to his commitment to treatment.

The ALJ provided several examples to support her conclusion that Plaintiff's treatment has been conservative and sporadic. In September 2010, Plaintiff presented at Legacy Emanuel Hospital in Portland complaining of suicidal thoughts. AR 552. According to the physician's report, Plaintiff recently had consumed alcohol and was non-compliant with his medications. *Id.*

The ALJ also noted that Plaintiff, when he is on medication, is rational and able to plan and follow through on projects. AR 22, 294. Off medications, Plaintiff is very impulsive. *Id.* At his hearing, Plaintiff testified that his health had improved since October 2009. AR 45. This was not only because he "rained [sic] in on the drinking and cut back on smoking," but also because he began taking medications that reduced the severity of his mood swings. *Id.* In 2011, Plaintiff stated that his medication made him "the most stable" he had ever been. AR 23, 500.

The Court rejects the ALJ's assertion that Plaintiff's conservative and sporadic medical treatment suggests that he has not taken his symptoms so seriously as to follow medical advice. While an ALJ may consider a failure to follow a prescribed course of treatment when weighing a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008), the ALJ must also consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284. "Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *Id.*

Plaintiff admitted to not being fully compliant with his medications. AR 552. The record indicates, however, that Plaintiff's failure to comply was connected to his mental limitations and homelessness. For example, in September 2010 when Plaintiff reported to the hospital and admitted to being non-compliant with his medications, he had been living in blackberry bushes for at least four months because of his fear of being near people. AR 405, 408. In addition to homelessness, the ALJ did not consider the possibility that Plaintiff's bipolar disorder prevented him from consistently complying with his medical treatment. "Mental illness in general and bipolar disorder in particular (in part because it may require a complex drug regimen to deal with both the manic and the depressive phases of the disease), may prevent the sufferer from taking

[his] prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454

F.3d 627, 630 (7th Cir. 2006) (citations omitted).

Because the record indicates that Plaintiff's failure properly to treat his symptoms was in

part due to his functional limitations, the Court finds he provided an adequate explanation for not

having been fully compliant with his medical treatment. *See Ray v. Comm'r of Soc. Sec. Admin.*,

2012 WL 1597264, at *13 (D. Or. Mar. 20, 2012), *findings  and recommendation adopted sub

nom. Ray v. Astrue*, 2012 WL 1598239 (D. Or. May 7, 2012) (indicating that for the ALJ

properly to rely on a claimant's failure to follow a prescribed course of treatment as a basis to

discredit a claimant's credibility, the claimant's failure must be intentional); *Mackey v.

Colvin*, 2014 WL 3361911, at *7 (D. Or. July 8, 2014) (finding that the ALJ's reliance on failure

to comply with medical treatment was not a clear and convincing reason for finding claimant not

credible where claimant's poor memory, supported by the record, provided a compelling reason

for noncompliance).

In addition to conservative treatment and non-compliance with medical treatment, the

ALJ also discredited Plaintiff because: (1) the objective evidence did not support his allegations;

(2) he was able to perform largely normal daily activities despite his mental impairments; and

(3) he left his previous job because his parole ended. AR 22-23. An ALJ may not make a

negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466

F.3d 880, 883 (9th Cir. 2006). Thus, the Court must determine whether the ALJ properly

discredited Plaintiff either because he was able to perform largely normal daily activities despite

his mental illness *or* because he left his previous job after his parole ended.

The ALJ found that Plaintiff's activities of daily living were inconsistent with his claim of disability. AR 23. Specifically, the ALJ described Plaintiff's ability to function independently, do housework, shop, travel to Alaska, utilize public transportation, and use a computer at the library. *Id.* Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict claims of a totally disabling condition or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151, at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

Plaintiff testified that he is able to get dressed and groomed on his own, do housework, cook, grocery shop, and use public transportation, and that he has travelled once since October 2009. AR 54-55. The Commissioner cites *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008), for the proposition that the ALJ properly rejected Plaintiff's testimony regarding his limitations in mental functioning because the ALJ identified daily activities that Plaintiff performs. This case, however, is distinguishable from *Stubbs-Danielson*. In *Stubbs-*

*Danielson*, the plaintiff claimed physical ailments including lumbar degenerative disc disease and obesity, in addition to mental impairments. *Id.* at 1171. The court found the plaintiff's ability to perform tasks like laundry, cooking, and house cleaning contradicted the plaintiff's allegations of a physical disability. Here, Plaintiff does not allege physical limitations. He alleges that during times of severe depression caused by his bipolar disorder, he cannot work. Bipolar disorder is episodic in nature and Plaintiff has good days and bad days. The ALJ erred in not considering this fact and discrediting Plaintiff's credibility based on his daily activities. *See Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2012) (finding that the ALJ's credibility determination regarding daily activities did not take into account the episodic nature of bipolar disorder, and was "not ideal in this regard").

With respect to Plaintiff's employment history, he has had numerous short-term jobs and large gaps in employment. His most recent job was in approximately 2009, working as a telephone solicitor. AR 531. Plaintiff testified at the hearing that he left this job because he "got tired of having to lie" to the people he was soliciting. AR 37. Plaintiff also testified that he quit because he got "off parole" and employment was no longer a requirement. AR 39-40. A plaintiff's work history that shows he has little propensity to work may negatively affect his credibility regarding his inability to work. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding that the ALJ did not act arbitrarily in discrediting a plaintiff in part due to her "extremely poor work history" and "little propensity to work"). The ALJ's conclusion that Plaintiff's poor work history negatively affected his credibility is a specific, clear, and convincing reason to discredit Plaintiff's testimony.

Because the ALJ provided a clear and convincing reason to discredit Plaintiff's testimony, the ALJ's determination that the objective medical evidence does not support

Plaintiff's symptom testimony is another appropriate reason to discredit Plaintiff's testimony. In countering this determination by the ALJ, Plaintiff argues that his forgetfulness should excuse any noncompliance with treatment. This argument misunderstands the ALJ's findings. Only one of the ALJ's reasons for discrediting Plaintiff was his lack of compliance with treatment, which is discussed above. Another of the ALJ's reasons was the fact that the objective medical evidence does not support the limitations described by Plaintiff. For example, when Plaintiff met with examining psychologist Gary Sacks, Ph.D., and complained that his "short-term memory is completely gone," Dr. Sacks observed that these complaints were "in excess of observed impairment" because Plaintiff was able to perform normally on memory tests. AR 460. An examining physician's observation that a Plaintiff's complaints were inconsistent with his demonstrated abilities during an examination is a specific and legitimate reason to discount his credibility. *Batson*, 359 F.3d at 1196.

   In summary, the Court determines that the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. Furthermore, the ALJ's reasons were properly supported by the record and sufficiently specific to allow the Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

## B.  Treating Mental Health Providers

   Plaintiff argues the ALJ did not properly consider the opinions of Plaintiff's treating mental-health sources, Arthur Downard, PMHNP, a psychiatric mental-health nurse practitioner, and Katie Smith, MSW, QMHP, a social worker, as required in Social Security Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p clarifies how the Social Security Administration considers opinions from sources who are not "acceptable medical sources." Under the applicable regulations, only licensed physicians and certain other qualified

PAGE 14 – OPINION AND ORDER

specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a); *see also*

SSR 06–03p (defining "acceptable medical sources" as licensed physicians, licensed or certified

psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists).

Evidence of disability, however, may also be provided by "other sources." 20 C.F.R.

§ 404.1513(d). "Other sources" include medical sources that are not "acceptable medical

sources." *Id.* § 404.1513(d)(1). These other medical sources include nurse practitioners,

physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists,

and therapists. *Id.* The ALJ can use other medical source opinions in determining the "severity of

the individual's impairment(s) and how it affects the individual's ability to function."

Mr. Downard and Ms. Smith are considered other medical sources because neither is a

licensed physician or another qualified specialist considered an "acceptable medical source." *Id.*

§ 404.1513(a). To reject the competent testimony of other medical sources, the ALJ need only

give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner*

*v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the

ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the

testimony are noted, even though the ALJ does "not clearly link his determination to those

reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503,

512 (9th Cir. 2001). The ALJ also may "'draw inferences logically flowing from the evidence.'"

*Tommasetti*, 533 F.3d at 1040 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In considering how much weight to give other medical source opinion evidence, the ALJ

should consider: (1) "how long the source has known and how frequently the source has seen the

individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the

source presents relevant evidence to support an opinion"; (4) "how well the source explains the

PAGE 15 – OPINION AND ORDER

opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-3p, 2006 WL 2329939, at *4-5.

### 1.  The opinion of Mr. Downard

The ALJ considered the opinion of Mr. Downard, a treating nurse practitioner, but did not give it "much weight" because it contradicted the mental-status examinations of Dr. Sacks, Dr. Causeya, and Ms. Smith. AR 24. While Mr. Downard opined in February 2012 that poor attention and concentration would contribute to Plaintiff's inability to function in a competitive work setting, the mental-status examinations conducted by other practitioners showed normal concentration and attention. AR 461, 533, 548. Plaintiff argues that the ALJ erred by failing to apply the factors in SSR 06-03p to Mr. Downard's opinion. Yet how "consistent the opinion is with other evidence" is a factor listed in SSR 06-03p. 2006 WL 2329939, at *4. Because the ALJ considered Mr. Downard's opinion, and found it inconsistent with the other evidence in the record, the Court upholds the ALJ's conclusion in this regard. "Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679 (citations omitted).

### 2.  The opinion of Ms. Smith

The ALJ also gave the assessment of Ms. Smith, Plaintiff's case manager, "little weight" because Ms. Smith's opinion was not consistent with her clinical notes. AR 24. In her October 20, 2011 assessment, Ms. Smith wrote that while Plaintiff's mood and affect were flat, his appearance was appropriate, his hygiene was good, his attitude was helpful, he was oriented to place, time, and circumstances, his thought processes were concrete, his intelligence appeared above average, and he appeared to have fair judgment. AR 547-48. But in a February 2012 letter to Plaintiff's attorney, Ms. Smith wrote that Plaintiff is unable to remember appointments, has

difficulty controlling his reactions if frightened or angry, and that his challenges would make maintaining employment unlikely. AR 561. The ALJ explained that Ms. Smith's October 20, 2011 treatment notes do not include any findings to support the limitations she described in the February 2012 letter to Plaintiff's attorney.

In January 2012, Plaintiff reported that for the past five months he had been meeting with Ms. Smith two to three times each month. AR 533. Plaintiff testified that Ms. Smith is his "case manager, or caseworker, or counselor," and that during their meetings Plaintiff and Ms. Smith would "sit down and talk." AR 59-60. Additionally, Ms. Smith's office is located in the building where Plaintiff was living at the time, and Ms. Smith was able to observe his interactions with other tenants. AR 561. SSR 06-03p lists "[h]ow long the source has known and how frequently the source has seen the individual," as well as "[a]ny other factors that tend to support or refute the opinion" as valid considerations in evaluating the opinion of an "other" source. 2006 WL 2329939, at *4.

By comparing Ms. Smith's October 20, 2011 notes with her February 2012 letter, the ALJ failed to take into account Ms. Smith's regular interactions with Plaintiff between those dates. In her February 2012 letter, Ms. Smith states that she has been seeing Plaintiff for several months. Although the record does not contain Ms. Smith's treatment notes from her ongoing visits with Plaintiff, her conclusions in the February 2012 letter are consistent with what she told examining physician Dr. Causeya on the telephone. AR 533. When Dr. Causeya called Ms. Smith, she reported that during the past five months Plaintiff had become very isolative, staying in his room during his depressed episodes and that he also engaged in disruptive verbal confrontation with other residents while in a depressed period. AR 533. In her February 2012 letter, Ms. Smith noted that Plaintiff has trouble resolving conflicts with his peers and that his

mania causes impulsive behavior. AR 561. These findings are based on direct observations and Ms. Smith's personal experience with Plaintiff. In addition, Ms. Smith's opinion is consistent with other evidence in the record demonstrating Plaintiff's impulsive behavior. *See e.g.*, AR 531.

Additionally, as discussed above, Plaintiff's condition is episodic in nature. Relying solely on Plaintiff's condition on October 20, 2011, without considering his condition during his ongoing treatment with Ms. Smith fails properly to take into account the episodic nature of bipolar disorder.

The Court finds that the ALJ erred in giving little weight to Ms. Smith's opinion based solely on the fact that Ms. Smith's letter of February 2012 was not supported by her evaluation of October 20, 2011, without considering Ms. Smith's subsequent interactions and experience with Plaintiff.

## C.  Dr. Karla Rae Causeya

Dr. Karla Rae Causeya performed a psycho-diagnostic examination on Plaintiff in January 2012. AR 530-38. She interviewed and tested Plaintiff, and interviewed Ms. Smith, Plaintiff's case manager and counselor. AR 60, 530. Plaintiff argues that even if the Court finds that the ALJ provided sufficient reasons to discredit Plaintiff, as it does, the ALJ still erred in giving little weight to the opinion of Dr. Causeya.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Andrews*, 53 F.3d at 1043. Specific, legitimate reasons for rejecting a physician's opinion include reliance on a

claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti*, 533 F.3d at 1041.

The ALJ gave little weight to the opinion of Dr. Causeya because Dr. Causeya only saw Plaintiff once, when he was not in a depressive mood, and Dr. Causeya's objective findings during that visit did not support her conclusions as to Plaintiff's functional limitation during a depressive mood. AR 23-24. The ALJ also discounted Dr. Causeya's opinion because she noted that Plaintiff had rarely worked for more than three months at a time for an employer, when in fact he has worked for several employers longer than three months. *Id.*

In part, the ALJ discounted Dr. Causeya's opinion because it was inconsistent with her mental-status examination findings, which revealed good attention and orientation. AR 23. Specifically, the ALJ analyzed Dr. Causeya's findings on the day she met and examined Plaintiff, and found that they were inconsistent with Dr. Causeya's findings as to Plaintiff's limitations during a depressive episode. Plaintiff argues that even if he did not exhibit severe symptoms on the day of the examination, Dr. Causeya properly relied on a combination of her extensive testing, observations of Plaintiff, and personal interview with Plaintiff's case manager, Katie Smith. In addition, Plaintiff explains that because he isolates at home when he is severely depressed, it is unlikely that he will be examined by an examining psychologist during a period of severe depression.

An opinion of disability premised largely upon the claimant's own accounts of his symptoms and limitations may be disregarded, after those complaints have themselves been properly discounted. *Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995). Because the Court affirms the ALJ's conclusion that Plaintiff is not fully credible, the

issue becomes whether, in forming her opinion, Dr. Causeya sufficiently relied on sources other than Plaintiff's self-reporting.

Dr. Causeya observed Plaintiff on one of his "good" or "up" days, and administered several standardized tests during a psycho-diagnostic examination of Plaintiff. AR 533, 535-37. Plaintiff generally received average scores. AR 535. In evaluating Plaintiff's functional limitations, Dr. Causeya used the results from her own diagnostic examination, and found that Plaintiff has "no difficulty functioning in various aspects of his life . . . when he is in one of his 'good' moods." AR 536. These findings are consistent with the results of Dr. Causeya's testing. Dr. Causeya also concluded that when Plaintiff is in a depressed period, his functioning is "severely limited." Id. Thus, Dr. Causeya concluded that overall Plaintiff's functional limitations were as follows: Restriction of Activities of Daily Living—Moderately Severe; Understanding and Memory—Mild to Moderate; Sustained Concentration and persistence—Moderately Severe; Difficulties in Maintaining Social Functioning—Moderately Severe; Difficulties in Adaptation— Moderate; Episodes of Deterioration or Decompensation in Work-like Settings—Moderately Severe. Because Plaintiff was not in a depressed period when examined by Dr. Causeya, the ALJ found that findings regarding Plaintiff's limitations during a depressed period and combined overall were based on speculation and thus entitled to little weight.

The Court has already noted that bipolar disorder is episodic in nature and that it is improper to base Plaintiff's functional abilities solely on his performance during a single good day. The Court also accepts Plaintiff's argument that it would be difficult to examine Plaintiff during a depressive period because he isolates at home. Because Plaintiff was having a good day when he met with Dr. Causeya, it was appropriate for Dr. Causeya to interview Plaintiff's case manager, Ms. Smith. As noted above, Ms. Smith had an ongoing treatment relationship with

Plaintiff and her office was located in the same building as Plaintiff's apartment. Thus,

Ms. Smith had knowledge of Plaintiff's conduct during his depressive episodes. Accordingly, the

ALJ's conclusion that Dr. Causeya improperly relied on Ms. Smith's observations and that

Dr. Causeya improperly speculated regarding Plaintiff's functional limitations during a

depressive period is not supported by sufficient evidence in the record.[1]

The ALJ also gave Dr. Causeya's opinion little weight because by indicating that Plaintiff

has rarely worked for more than three months at a time, Dr. Causeya showed she either was not

objective or did not have accurate information. AR 24. The record shows that Plaintiff has held

several jobs longer than three months. Plaintiff worked on the Alaska Pipeline for two years, as a

telephone solicitor for two years, as a day laborer for more than three months, and as a rigger for

approximately ten months. AR 182, 531. An ALJ may "discredit" physicians' opinions that are

"conclusory, brief, and unsupported by the record as a whole." *Batson v. Barnhart*, 427 F.3d

1211, 1216 (9th Cir. 2005). Dr. Causeya did, however, note that Plaintiff's "last job was

approximately from 2007 to 2009, when he worked as a telephone solicitor for 30 hours a week."

AR 531. She also noted that Plaintiff held his first job from age 16 to 18. *Id.* Thus, while it is true

Dr. Causeya concluded that Plaintiff has "rarely" held a job for more than three months at a time

for one employer, she accurately recited that he has held some jobs for more than three months.

Dr. Causeya did not state that Plaintiff has *never* held a job longer than three months. She only

noted that Plaintiff has left many of his odd jobs impulsively and has *rarely* stayed with an

---

[1] The Court notes that the ALJ need not give weight to Dr. Causeya's ultimate conclusion that "it is not possible for [Plaintiff] to maintain gainful employment." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (holding that an ALJ is not bound by the uncontroverted opinion of physician as to the ultimate issue of disability—the claimant's ability to perform work).

employer longer than three months. Therefore, The ALJ's conclusion to the contrary is not supported by sufficient evidence in the record.

## CONCLUSION

The Commissioner's decision that Mr. Witt is not disabled is REVERSED and REMANDED for further proceedings. Upon remand, the ALJ shall consider Plaintiff's claim for disability considering Plaintiff's functional limitations as opined by Dr. Causeya and Katie Smith.

**IT IS SO ORDERED**.

DATED this 1st day of December, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge